FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS 2014 OCT 27   PM 3: 25
AUSTIN DIVISION

CLERK U.S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

ALLEN V. DIERKER and DOROTHY H. DIERKER,

        Plaintiffs,

-vs-                                        Case No.  A-13-CV-1043-SS

ACF INDUSTRIES,

        Defendant.

## O R D E R

Before the Court are Defendant ACF Industries, L.L.C's Motion for Summary Judgment, filed July 31, 2014 [#15]; Plaintiffs' Reply, filed October 6, 2012 [#22];  Defendant ACF Industries, L.L.C's Reply to Plaintiffs' Response to ACF's Motion for Summary Judgment, filed October 9, 2014 [#23]; and Plaintiffs' Reply to Defendant ACF, Industries' Response to Allen V. Dierker and Dorothy A. Dierker Motion for Summary Judgment, filed October 15, 2014 [#24].   Having considered the motions, responsive pleadings, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

### I. Background

Plaintiffs Allen V. Dierker ("Dierker") and Dorothy H. Dierker ("Mrs. Dierker") filed this action against sole defendant ACF Industries, L.L.C. ("ACF") in the 368th Judicial District Court of Williamson County, Texas on November 13, 2013.  ACF removed the action to this court on December 9, 2013.

By way of their original complaint filed in state court, Plaintiffs allege ACF has failed to pay monies due them under a retirement plan.  Plaintiffs contend this failure constitutes breach of contract, breach of implied-in-fact contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and intentional infliction of emotional distress.  Plaintiffs seek $2

million in monetary damages for their claims based on breach of contract and quasi-contract theories, and an additional $3 million for their claim of intentional infliction of emotional distress.[1]

Although Plaintiffs did not file an amended complaint after this action was removed, on March 14, 2014 they filed a document entitled "Open Statements." In that document, they explain Dierker worked for ACF from 1969 to 1986, then was laid off. According to Plaintiffs, ACF was to pay Dierker a lump sum payment at retirement, but refused to pay. Plaintiffs also indicate a women at ACF told them Dierker could not get his lump sum payment until he turned 62. According to Plaintiffs, Dierker requested a beneficiary form to ensure Mrs. Dierker would receive payment should anything happen to him before he turned 62. Although somewhat unclear, Plaintiffs assert ACF tricked them into signing an incomplete form with no monetary details. They admit they thereafter received monthly payments of $113.00, but state they do not understand how that amount was calculated. Plaintiffs further assert they were informed by the Pension Benefit Guaranty Corporation that Dierker was supposed to receive $4,500.00 monthly or annually $54,000.00. They conclude ACF has cheated them out of that amount, and substituted the $113.00 payment.

ACF has now filed a motion for summary judgment. ACF contends: (1) all of the Plaintiffs' state law claims should be dismissed as preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"); (2) any claim asserted by Plaintiffs under ERISA is without merit; and (3) even if Plaintiffs' state law claims are not preempted by ERISA, they all fail as a matter of law. The parties have filed responsive pleadings and the matters are now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant

---

[1] The Court notes Plaintiffs' complaint is a form which was originally drafted to challenge the distribution of funds from an estate. The complaint is largely devoid of any specific factual allegations.

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254,106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87,106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 110, 122 (1993).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

### III. SUMMARY JUDGMENT EVIDENCE

Dierker was born in 1949.  He was employed by ACF beginning August 20, 1969 through June 8, 1984.  (Def. Mot. for Summ. Jt. Ex. 2 ("Bowles Aff.") ¶ 5 & Exs. C-D).  ACF provides its employees with a company sponsored and funded retirement pension plan (the "Plan").  (Bowles Aff. ¶ 1 & Exs. A-B).  Dierker is entitled to receive a benefit under the Plan.  (Bowles Aff. ¶ 5).

The amount of retirement benefits available to an eligible recipient under the Plan are a function of the number of years of participation in the Plan, and the participant's compensation during those years. (Bowles Aff. ¶ 4). Specifically, Dierker was a member of a collective bargaining unit and is thus eligible under the Plan for a retirement benefit based on a negotiated minimum benefit rate of $17.50 per year of service for a yearly benefit at normal retirement age of $2,940.00. (*Id.* ¶¶ 4-5). The Plan also permits an eligible recipient to receive a reduced early retirement benefit if the recipient retires between the Early Retirement Age of 55 and the Normal Retirement Age of 65. (Bowles Aff. ¶ 3).

By letter dated December 2, 1985, Dierker was provided information regarding his benefit under the Plan. The letter informed Dierker he would be entitled to a deferred vested retirement benefit of approximately $245 per month beginning at age 65. The letter further explained that benefit would be reduced if Dierker chose to retire earlier than age 65 or if he chose to provide continued income to a surviving spouse. (Bowles Aff. ¶ 8 & Ex. J).

By letter dated August 13, 2000, and in response to Dierker's request, ACF provided Dierker estimated monthly benefits payable under the Plan. Specifically, the letter stated Dierker would receive a monthly payment at age 55 of $127.00, which would be reduced to $113.00 if he chose to have a 100% joint and survivor benefit. The letter further stated Dierker would receive a monthly payment at age 60 of $208.00, which would be reduced to $179.00 if he chose to have a 100% joint and survivor benefit. (*Id.* Ex. K). The information concerning Dierker's estimated benefit at ages 55 and 65 was communicated to Dierker by letter dated February 17, 2003. The letter further identified the estimate for age 55 "as of April 1, 2004" and for age 65 "as of April 1, 2014." (*Id.* Ex. L).

By letter dated January 22, 2004, and in response to Dierker's request, ACF provided Dierker with "the necessary forms to be completed in order to begin your pension benefit" from the Plan. (*Id.* Ex. M). The letter also stated Dierker would receive a monthly payment at age 55 of

4

$127.00, which would be reduced to $113.00 if he chose to have a 100% joint and survivor benefit. (*Id.*).

On March 4, 2004, Dierker and Mrs. Dierker executed a Retirement Benefit Application. In the Application, Dierker stated he elected to begin his retirement on April 1, 2004.  Dierker also stated in the Application "I understand that once payments begin my election is irrevocable." (*Id.* Ex. E).  Dierker and Mrs. Dierker also executed an Election Form of Payment form that same date. The Election stated the form of payment chosen was a 100% joint and survivor annuity.  (*Id.* Ex. E).

By letter dated March 31, 2004, Dierker was informed by ACF that he could not receive his pension benefit under the Plan in the form of a lump sum because the present day value of his benefit exceeded $3,500.00 and the terms of the Plan permitted only participants with a benefit value under $3,500.00 to receive a lump sum payment. (*Id.* Ex. N).  By letter dated April 26, 2004, Dierker was informed by ACF that his application to begin his pension benefits had been approved effective April 1, 2004 under the election 100% Joint and Survivor Option.  The letter further stated he would receive, on or about May 1, 2004, a deposit of $226.00 representing his benefit for the months of April and May and would thereafter receive monthly payments in the amount of $113.00. (*Id.* Ex. H).  Dierker has continued to receive a monthly benefit of $113.00 to the present. (Bowles Aff. ¶ 7).

By correspondence dated May 11, 2011, Dierker made a written complaint to ACF contending he was not receiving his full retirement benefit.  By letter dated May 31, 2011, ACF responded with an explanation of the calculation of Dierker's benefit, based on his years of service and compensation.  The letter also explained that benefit was reduced based on Dierker's election to receive his benefit at age 55 and to provide a joint and survivor benefit to Mrs. Dierker.  The letter also listed the dates and description of the correspondence sent to Dierker from ACF regarding his benefit from December 1985 through March 2004.  In conclusion, the letter stated

Dierker's benefit was determined correctly under the terms of the Plan. (Def. Mot. for Summ. Jt. Ex. 3).

## IV. ANALYSIS

Defendant ACF seeks summary judgment on Plaintiffs' claims on several bases. Specifically, ACF contends: (1) all of the Plaintiffs' state law claims should be dismissed as preempted by ERISA; (2) any claim asserted by Plaintiffs under ERISA is without merit; and (3) even if Plaintiffs' state law claims are not preempted by ERISA, they all fail as a matter of law. The Court will address each issue in turn.

### 1. ERISA Preemption

To determine whether Plaintiffs' claims have been preempted by ERISA, the Court must first ascertain whether the Plan constituted an ERISA employee benefit plan. In determining whether a particular plan qualifies as an ERISA plan, a court must establish whether the plan: (1) exists; (2) is not excluded from ERISA coverage by the safe harbor exclusion established by the Department of Labor; and (3) meets the ERISA requirement of establishment or maintenance by an employer for the purpose of benefitting the plan participants. *Shearer v. Sw. Serv. Life Ins. Co*, 516 F.3d 275, 279 (5th Cir. 2008); *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).

Under ERISA, "[]the term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both." 29 U.S.C. § 1002(3). The term "employee pension benefit plan" means any plan "established or maintained by an employer" which "provides retirement income to employees." 29 U.S.C. § 1002(2). "As this language suggests, there are two elements to an ERISA plan: first, it must be established or maintained by an employer, and second, the employer must have a certain intent–a purpose to provide benefits to its employees." *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 977 (5th Cir. 1991).

It is clear from the summary judgment evidence that the Plan exists and was established and maintained by ACF. Further, it is apparent the intent of the Plan is to provide retirement benefits to ACF employees. Plaintiffs do not contest otherwise. Accordingly, the first and third elements of the test for determining whether a plan is an ERISA plan are met. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 107 S. Ct. 2211, 2216 (1987) (listing employer's obligations under ERISA plan including "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements").

As to the second element, in enacting ERISA, the Secretary of Labor was granted authority to promulgate enacting regulations. Pursuant to that authority, the Secretary of Labor has created an exemption for certain group or group-type insurance programs from the scope of ERISA, referred to as a "safe harbor" for certain types of claims. 29 C.F.R. § 2510.3–1(j); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 190 (5th Cir. 2000). Under that "safe harbor" a plan is not governed by ERISA if (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer received no profit from the plan. *McNeil*, 205 F.3d at 190; *Meredith*, 980 F.2d at 355.

ACF's summary judgment evidence establishes ACF created the Plan pursuant to ERISA, and the Plan documents specifically state the recipient's rights under the Plan are governed by ERISA. (Bowles Aff. ¶ 2, Ex A Article 1.4, Ex. B § 15). Additionally, the entire cost of the Plan is paid by ACF. (Bowles Aff. ¶ 3, Ex A Article 11.1-11.3, Ex. B § 10). The Court thus concludes the Plan is not excluded under the safe-harbor provision. *See Read v. Sun Life Assur. Co. of Canada*, 268 F. App'x 369, 371 (5th Cir. 2008) (plan does not fall within safe-harbor provision because employer was obligated to pay cost of plan); *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007) (plan falls within safe harbor only if employer does not contribute to plan); *McNeil*,

205 F.3d at 190 (same).  Accordingly, the Plan meets all three elements of the test and is an ERISA plan.

Because the Court has determined the Plan is an ERISA plan, the final step in determining whether Plaintiffs' claims are preempted by ERISA plan requires the Court to determine whether or not Plaintiffs' claims "relate to" the ERISA plan.  Specifically, ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." 29 U.S.C. § 1144(a) (expressly excepting two situations not applicable here).  Thus, ERISA preempts state law claims that address an area of exclusive federal concern, such as the right to receive benefits under an ERISA plan, and that directly affects the relationship between traditional ERISA entities. *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011); *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008).  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S. Ct. 2488, 2495 (2004) ("any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remed[ies] conflicts with the clear congressional intent to make the ERISA remed[ies] exclusive and is therefore preempted").

A review of Plaintiffs' complaint makes clear their claims are all based on contentions of improper behavior by ACF in regards to Dierker's receipt of retirement benefits under the Plan. Plaintiffs do not suggest otherwise in responding to the motion for summary judgment.  The Court thus concludes Plaintiffs' claims, all based on Texas common law, are preempted.  *See Hansen*, 940 F.2d at 979 (determination that plan is governed by ERISA tantamount to determination that plaintiff's state law causes of action are barred).  *See also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63, 107 S. Ct. 1542, 1546 (1987) (common law contract and tort claims seeking to recover benefits preempted by ERISA); *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (breach of contract claim preempted by ERISA); *Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 450 5th Cir. 2006) (state-law breach-of-contract claim to recover difference between what

8

annuity will pay and what plaintiff alleges he was promised annuity would pay is claim that "relate[s] to" an "employee benefit plan" and is preempted by ERISA); *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 276–78 (5th Cir. 2004) (claims under Texas Insurance Code and for breach of duties of good faith and fair dealing preempted by ERISA); *McNeil*, 205 F.3d at 191 (state law claims for breach of contract, breach of duty of good faith and fair dealing, negligent misrepresentation, common law discrimination, waiver, estoppel, ratification and under Texas Insurance Code preempted by ERISA); *Hogan v. Kraft Foods*, 969 F.2d 142, 144-45 (5th Cir. 1992) (ERISA preempts plaintiff's state law claims for breach of contract, violations of insurance code, deceptive trade practices, breach of duty of good faith and fair dealing, negligence, and intentional infliction of emotional distress). Accordingly, ACF is thus entitled to summary judgment as to Plaintiffs' claims based on ERISA preemption.

### 2. ERISA Cause of Action

ACF also argues any claim Plaintiffs may have seeking relief directly under ERISA fails because ACF has fully complied with the obligations imposed by the Plan. In pertinent part, ERISA provides a cause of action for "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1).

In this case, ACF's summary judgment evidence establishes, and Plaintiffs concede, ACF is paying Dierker a monthly benefit of $113.00 under the Plan. The evidence further explains the benefit is calculated as a function of years of service and a negotiated rate of compensation, and is reduced if retirement occurs early at age 55. By letters dated December 2, 1985, August 13, 2000, and February 17, 2003, ACF explained Dierker's benefit under the Plan, and the reduction in that benefit that would occur if he elected to retire at age 55.

Further, ACF's summary judgment evidence establishes Dierker was provided the forms on January 22, 2004, per his request, to complete in order to begin his pension benefit.  He was also again informed of the amount of benefit he would receive should he elect to complete the forms and retire at age 55.  Dierker and Mrs. Dierker executed a Retirement Benefit Application on March 4, 2004.

Plaintiffs did not submit any evidence which rebuts the evidence submitted by ACF.[2]  As reviewed above, in their "Open Statements," Plaintiffs suggest they were tricked into signing an incomplete form.  They assert they believed the form was only a beneficiary form.  Specifically, Plaintiffs describe the form as lacking an explanation and with "nothing to read on the back." (Open Stmt. at 7).

The form executed by Plaintiffs on March 3, 2004 is clearly entitled "Retirement Benefit Application."  The form consists of only one page and specifically states "I hereby make application for any retirement benefits, which I may be entitled to receive, as provided in the Employees Retirement Plan of ACF Industries, Inc. and the Supplemental Retirement Plan." (Bowles Aff. Ex. E) (emphasis omitted).

Thus, the Court concludes the unrebutted summary judgment evidence establishes ACF has paid Dierker the benefits due under the Plan, based on the elections made by Plaintiffs. Accordingly, ACF is entitled to summary judgment on any claim asserted by Plaintiffs to recover benefits due them under ERISA.

### 3. State Law Claims

ACF finally argues, should the Court determine Plaintiffs' state law claims are not preempted by ERISA, the claims fails as a matter of law.

---

[2]  Plaintiffs did attach numerous documents to their response to the motion for summary judgment, including many of the same documents included in ACF's summary judgment evidence.

### a. Breach of Contract and Implied in Fact Contract

Plaintiffs have asserted claims both for breach of contract and for breach of an implied in fact contract. Under Texas law, there are four elements for a breach of contract claim: (1) there was an enforceable valid contract between the parties; (2) the plaintiff performed its contractual obligations; (3) the defendant breached the contract; and (4) this breach caused plaintiff injury. *Southwell v. Univ. of the Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App.--San Antonio 1998, pet. denied); *Lynx Exploration & Prod. Co. v. 4-Sight Operating Co.*, 891 S.W.2d 785, 788 (Tex. App.--Texarkana 1995, writ denied). In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex. 1966). While most contracts are recorded in a written instrument, an implied in fact contract may arise from the actions and conduct of the parties. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972).

As set forth above, the summary judgment evidence submitted by ACF establishes Dierker elected to receive a monthly retirement benefit under the Plan at age 55. Pursuant to the terms of the Plan, his benefit was calculated as a function of number of years of service and a bargained for rate, and then reduced based on his early retirement age. Plaintiffs have not pointed to any provision of the Plan ACF has breached. Nor have Plaintiffs pointed to any actions or conduct of the parties which would have resulted in the formation of an implied in fact contract apart from the Plan. Accordingly, ACF is entitled to summary judgment on Plaintiffs' claims for breach of contract and for breach of implied in fact contract.

### b. Breach of Implied Covenant of Good Faith and Fair Dealing

ACF also contends Plaintiffs' claim of a breach of the implied covenant of good faith and fair dealing fails as a matter of law. ACF correctly points out the Texas Supreme Court has

"specifically rejected the implication of a general duty of good faith and fair dealing in all contracts." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595 n.5 (Tex. 1992). Rather, recognition of the duty of good faith and fair dealing is limited to protecting parties who have a special relationship based on trust or unequal bargaining power. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex. 1994). *See Arnold v. National Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987) (recognizing actionable duty of good faith and fair dealing between an insured and his or her insurance carrier).

ACF maintains its relationship as Dierker's former employer is not the type of special relationship which creates a duty of good faith and fair dealing. The Court agrees. *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000) (finding no duty of good faith and fair dealing in employment at will relationship). The Court also agrees, even if a duty was owed by ACF, Plaintiffs have not identified any act by ACF which would constitute a breach of duty. ACF has paid Dierker the monthly retirement benefit to which he is entitled under the Plan. Plaintiffs have not identified any other obligation owed to them by ACF. Accordingly, ACF is entitled to summary judgment as to Plaintiffs' claim of a breach of the implied covenant of good faith and fair dealing.

### c. Promissory Estoppel

ACF further maintains summary judgment should be granted as to Plaintiffs' claim of promissory estoppel. Under Texas law, the elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

As to the first element, in their various pleadings and attachments Plaintiffs assert a number of reasons why they believe ACF is not paying them the correct amount due in retirement benefits.

They generally suggest Dierker believed or understood his benefit would be greater.  Plaintiffs do not, however, point to a specific promise made to either of them by ACF or anyone acting on ACF's behalf which supports that understanding.  Without such a promise, their claim fails.  *See Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex. App.—Dallas 1989, no writ) (to recover on claim of promissory estoppel alleged promise must not be "too vague and indefinite").  *See also Neeley v. Bankers Trust Co. of Tex.*, 757 F.2d 621, 630 n.7 (5th Cir. 1985) (indefiniteness prevents plaintiff from prevailing on promissory estoppel theory).

Similarly, Plaintiffs have not explained how they relied on any alleged promise by ACF to their detriment.  Nor have they shown how any reliance was justified.  These failures also doom this claim.  *See Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 300 (5th Cir. 2010) (promisee's "reliance must be both reasonable and justified"); *Frost Crushed Stone Co. v. Odell Geer Constr. Co.*, 110 S.W.3d 41, 45 (Tex. App.—Waco 2002, no pet.) (same); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 142 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (in absence of definite promise, "reliance [i]s not reasonable or justified as a matter of law").  Accordingly, ACF is entitled to summary judgment on Plaintiffs' claim of promissory estoppel.

### d. Intentional Infliction of Emotional Distress

ACF finally argues Plaintiffs' claim for intentional infliction of emotional distress fails.  The elements of a claim for intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.  *Lane v. Halliburton*, 529 F.3d 548, 584 (5th Cir. 2008); *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003).  "Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Tiller*, 121 S.W.3d at 713.

13

Plaintiffs' claim is based on their contention that ACF has not paid the retirement benefits due Dierker.  They have not, however, pointed to any action which rises to the level necessary to constitute extreme and outrageous conduct under Texas law.  *See Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999) (explaining that "the fact that an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress"). *See also Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000) (under Texas law ordinary employment disputes are not adequate for intentional infliction claims).

Moreover, as ACF points out, under Texas law, "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies."  *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).  *See also Hoffman–LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (tort's clear purpose "was to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied").  As set forth above, Plaintiffs here have a remedy under ERISA for claims regarding ACF's execution of the terms of the Plan.  Accordingly, they are not entitled to seek relief under a theory of intentional infliction of emotional distress.  *See Creditwatch*, 157 S.W.3d at 816 ("Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill").  The Court thus concludes ACF is entitled to summary judgment on Plaintiffs' claim of intentional infliction of emotional distress.

14

In accordance with the foregoing:

IT IS ORDERED that Defendant ACF Industries, L.L.C's Motion for Summary Judgment

[#15] is GRANTED.

SIGNED this the 27 day of October 2014.


SAM SPARKS
UNITED STATES DISTRICT JUDGE